IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMANDA DOUGHERTY,<br><br>                 Plaintiff,<br><br>   v.<br><br>QUICKSIUS, LLC,<br><br>                 Defendant. | CIVIL ACTION<br>NO. 15-6432 |

**OPINION**

**Slomsky, J.**                                                                                                          **July 13, 2016**

## I.   INTRODUCTION

Plaintiff Amanda Dougherty has filed suit claiming that she was denied employment because a criminal background check erroneously reported her criminal history multiple times, making it appear worse than it actually was. She is suing Defendant Quicksius, LLC (d/b/a Quick Search), the company that prepared the report. Before the Court is Defendant Quicksius, LLC's Motion to Dismiss Count II of Plaintiff's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

On February 1, 2016, Plaintiff filed the Amended Complaint, alleging in Count II that Defendant violated § 1681e(b) of the Fair Credit Reporting Act ("FCRA").[1] Plaintiff seeks statutory and/or actual damages, as well as attorney's fees and punitive damages under 15 U.S.C.

---

[1] Section 1681e(b) provides as follows: "Accuracy of report: Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

1

§ 1681o and/or § 1681n.[2] Because Plaintiff alleges that what occurred to her is apparently widespread, she seeks class action status on behalf of other similarly situated persons.

In Count II, Plaintiff alleges that Defendant violated the FCRA by reporting the same criminal offenses multiple times that appeared in an employee criminal background check. Plaintiff submits that this duplicative reporting precluded her from being hired because it overstated her criminal record. For reasons that follow, Defendant's Motion to Dismiss Count II will be denied.[3]

---

[2] Section 1681o (Civil Liability for Negligent Noncompliance) provides:

> (a) In General: Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1) any actual damages sustained by the consumer as a result of the failure; and
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Section 1681n (Civil Liability for Willful Noncompliance) provides:

> (a) In General: Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
> (1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
> (2) such amount of punitive damages as the court may allow; and
> (3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

[3] Defendant has moved to dismiss only Count II of the Amended Complaint. The Court will not address the claim of summary offenses being reported as misdemeanors, which is alleged in Count I of the Amended Complaint, because Defendant has not moved to dismiss that Count. Likewise, the Court need not address Count III, wherein Plaintiff alleges that

**II.     BACKGROUND**

Defendant is a consumer reporting agency ("CRA") under the FCRA and, as such, compiles and sells reports regarding the "character, general reputation, personal characteristics, or mode of living" of various individuals. (Doc. No. 13 ¶ 46.) In July 2014, Plaintiff applied for a job with Merry Maids, a cleaning company in West Chester, Pennsylvania, through the staffing agency Barrett Business Services, Inc. ("BBSI"). (Id. ¶ 43.) On July 9, 2014, pursuant to a request by Plaintiff's prospective employer, Defendant created a criminal background report detailing Plaintiff's criminal history. (Id. ¶¶ 44-45.) The report was given to Merry Maids and BBSI as a required condition of the application procedure and standard hiring process. (Id. ¶¶ 45, 47.)

Plaintiff has been convicted of several summary offenses in Pennsylvania. The following offenses appear in the criminal background report: (1) "Criminal Mischief – Damage Property," (2) "Harassment – Subject Other to Physical Contact," (3) "Driv While Oper Priv Susp or Revoked," (4) "Leaving Child Unattended in Vehicle," and (5) "Driving W/O a License." (Id., Ex. A.)

The criminal background report includes three sections listing offenses in local, state, and national jurisdictions: (1) "County Criminal Record Search Fel & Misd" ("County"), (2) "Statewide Criminal" ("State"), and (3) "National Criminal/Sex & Violent Offender Search" ("National"). (Id. ¶ 48.) The County section of the report is limited to Chester County, Pennsylvania. (Id., Ex. A.) This section lists five offenses in total, including one through four listed above, in addition to a conviction for "Harassment – Subject Other to Physical Contact Move to Non-Traffic." (Id.) The harassment charge appears twice, but in reality it is a single

---

Defendant failed to properly conduct a reasonable reinvestigation under § 1681i, or Count IV, wherein Plaintiff alleges that Defendant failed to disclose all of the information in Plaintiff's consumer file under § 1681g(a).

criminal offense. (Id.) The State section lists the first four offenses noted above for a second time and is the only section that includes the fifth offense, "Driving W/O a License." (Id.) The criminal mischief offense appears twice in this section. (Id.) The National section lists convictions one through four. (Id.) All of the offenses enumerated in Defendant's report are summary offenses under Pennsylvania law, but are categorized as "misdemeanors," "non-traffic," or "traffic" offenses within the various sections. (Id.)

After the criminal background report was sent to BBSI and Merry Maids, Plaintiff called Defendant to "dispute the accuracy of the report." (Id. ¶ 72.) In response, Defendant revised the criminal background report. (Id. ¶ 73.) The altered report changed the "degree of offense" for the traffic offenses in all three sections from "misdemeanor" to "traffic." (Id. ¶ 74.) None of the non-traffic summary offenses were corrected. (Id., Ex. B.) Plaintiff alleges, "[t]he Statewide section duplicatively reported Plaintiff's summary offenses for criminal mischief and harassment, and her traffic offenses for driving with a suspended license and leaving a child unattended in a vehicle." (Id. ¶ 66.) Plaintiff avers that, based on her criminal background report, she was not hired by Merry Maids. (Id. ¶ 76.)

In May 2015, Plaintiff requested a full copy of her consumer file from Defendant. (Id. ¶ 77.) Defendant only sent her the amended report, and did not include the initial July 9, 2014 report that it sent to BBSI and Merry Maids. (Id.) Both the initial criminal background report and the amended report list "summary offenses for criminal mischief and harassment, and traffic offenses for driving with a suspended license and leaving a child unattended in a vehicle" in multiple sections. (Id. ¶ 70.)

On February 1, 2016, Plaintiff filed a First Amended Class Action Complaint ("the Amended Complaint"). (Doc. No. 13.) On February 16, 2016, Defendant filed a Motion to Stay

Proceedings or, in the Alternative, to Dismiss Count II of Plaintiff's Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6).[4] (Doc. No. 17.) On March 4, 2016, Plaintiff filed an Opposition to Defendant's Motion to Stay and/or Dismiss. (Doc. No. 18.) Defendant filed a Reply on March 18, 2016. (Doc. No. 22.) A hearing was held on the Motion to Dismiss on May 3, 2016. (Doc. No. 26.) For reasons that follow, the Motion will be denied.

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 231 n.14 (3d Cir. 2013) (citing Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n.27 (3d Cir. 2010)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010) set forth a three-part

---

[4] The Motion to Stay is now moot as the Supreme Court has decided the two cases that were pending pertaining to this issue. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540 (2016); Tyson Foods, Inc. v. Bouaphakeo, 136 S. Ct. 1036 (2016). The parties agreed in a Joint Statement filed on June 17, 2016 that Spokeo, Inc. does not impact this case at this stage. (Doc. No. 31.) With respect to Tyson, Defendant had asserted that, because one question before the Court was whether a class could proceed "if the proposed representative suffered an injury in fact as a result of the alleged legal violation but other class members did not," Tyson could have significant bearing on this case. (Doc. No. 17 at 9.) However, in its March 22, 2016 decision, the Supreme Court stated that that issue was not properly before it. At the May 3, 2016 hearing, this Court noted that Tyson does not appear to impact the case at this stage. (Doc. No. 30 at 18:9-12.)

analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). "This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679. The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

**IV.    ANALYSIS**

Congress adopted the FCRA to ensure that consumer reporting is "fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681. There are two recovery schemes under the FCRA: (1) "civil liability for actual damages, costs and attorney's fees" when the consumer reporting agency ("CRA") is negligent; and (2) if a

6

CRA willfully violates the FCRA, the statute also imposes "liability for punitive and, potentially, statutory damages." Smith v. HireRight Sols., Inc., 711 F. Supp. 2d 426, 432 (E.D. Pa. 2010) (citing 15 U.S.C. § 1681o, n). Furthermore, "the breadth and scope of the FCRA is both evident and extraordinary," and the FCRA "is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it." Seamans v. Temple Univ., 744 F.3d 853, 868 (3d Cir. 2014).

In Count II of the Amended Complaint, Plaintiff avers that Defendant negligently and/or willfully violated § 1681e(b) of the FCRA, which states:

> Accuracy of report: whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

(Doc. No. 13 ¶ 10.) In addressing Defendant's Motion to Dismiss, the Court will first determine whether the report was accurate. See Cortez v. Trans Union, LLC, 617 F.3d 688, 709 (3d Cir. 2010); Miller v. Transunion, LLC, No. 12-1715, 2013 WL 5542008, at *9 (M.D. Pa. Aug. 14, 2013). If an inaccuracy is found, the inquiry will then turn to whether reasonable procedures were followed. See Cortez, 617 F.3d at 709; Miller, No. 12-1715, 2013 WL 5542008, at *9. The last segment of the analysis will focus on whether Defendant acted negligently and/or willfully in committing the violation. See Cortez, 617 F.3d at 708-09; Dennis v. Trans Union, LLC, No. CIV. A. 14-2865, 2014 WL 5325231, at *8 (E.D. Pa. Oct. 20, 2014). The Court will discuss each part of the analysis in turn.

### A) Accuracy of the Report

The first issue is whether there are any inaccuracies in the report. A report is inaccurate if it is "patently incorrect" or "'misleading in such a way and to such an extent that it can be expected to [have an] adverse[ ]' effect." Schweitzer v. Equifax Info. Sols., LLC, 441 F. App'x

896, 902 (3d Cir. 2011) (quoting Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001)). Thus, "a consumer report that contains technically accurate information may be deemed 'inaccurate' if the statement is presented in such a way that it creates a misleading impression." Saunders v. Branch Banking & Trust Co., 526 F.3d 142, 148 (4th Cir. 2008); see also Seamans, 744 F.3d at 865.

Plaintiff asserts that the duplicative entries render the report inaccurate. (Id. ¶ 1.) She argues that presenting her criminal history this way "creates a misleading impression" that makes her criminal record appear more severe than it actually is. (Doc. No. 18); see Saunders, 526 F.3d at 148 (finding that even a technically accurate report can be inaccurate if it creates a misleading impression).

Defendant argues that Count II of the Amended Complaint should be dismissed because it was not on notice that duplicative reporting would be considered an inaccuracy. (Doc. No. 17 at 18.) In support, Defendant cites a United States Supreme Court case that found in favor of a CRA based on a "dearth of guidance and the less-than-pellucid statutory text." See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 70 (2007) (finding that Safeco did not willfully violate notice obligations imposed by the FRCA); see also Cortez, 617 F.3d at 721 (stating that the Supreme Court has "suggested that a dearth of authoritative guidance may hinder a party's efforts to interpret the law reasonably").

The statute at issue in this case has a "plain and ascertainable meaning." Smith, 711 F. Supp. 2d 426, 436. The FCRA states that a CRA "shall follow reasonable procedures to assure maximum possible accuracy of the information." 15 U.S.C. § 1681e. Moreover, courts have held that duplicative reporting can constitute inaccuracy. See, e.g., Smith, 711 F. Supp. 2d at 436 ("[I]t is reasonable—and plausible—to infer that duplicative reporting of criminal cases on a

single report creates an adverse presentation of Plaintiff to a prospective employer.") With regard to notice, case law, agency guidance, and the statutory text can all put a defendant on notice that its reporting may not be accurate. Seamans, 744 F.3d at 868 (citing Safeco, 551 U.S. at 69-70). Therefore, based on the language of the FCRA and the Smith decision in this District, Defendant was on notice that a report which contains duplicative reporting of criminal cases may be inaccurate.

Viewing the pleadings in the light most favorable to Plaintiff, an inference of inaccurate reporting can be made based on the facts alleged in the Amended Complaint. Here, Plaintiff asserts that the report not only lists the same offenses in each of the three databases, but it repeats offenses within individual databases as well. (Id. ¶¶ 59-60.) According to Plaintiff, the report lists fifteen offenses when she was only convicted of five. Thus, the repetition of the same offenses multiple times may constitute an inaccuracy. See Hawkins v. S2Verify LLC, No. C 15-03502 WHA, 2016 WL 107197 (N.D. Cal. Jan. 11, 2016) ("At the Rule 12 stage, it is plausible that the inclusion of the same criminal activity multiple times in a report could be misleading in a way that adversely affected IPC's decision regarding plaintiff's employment.")

  **B)**  **Reasonableness of Procedures**

As noted, § 1681e(b) states that a CRA "shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." A CRA is not strictly liable for an inaccurate report. See Philbin, 101 F.3d at 962-63 ("The agency can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures, which will be a jury question in the overwhelming majority of cases.") (quoting Cahlin v. Gen. Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir.

1991)).  Furthermore,

> [t]he mere fact that Plaintiff cannot, at this juncture, either articulate any particular procedures or policies that Defendant internally maintains or describe alternative procedures that Defendant should have considered or adopted is not fatal to the claim.  Rather, such matters are particularly within the knowledge of Defendant and Plaintiff is not expected to plead such matters with specificity absent the benefit of discovery.

Smith, 711 F. Supp. 2d at 435.

At the motion to dismiss stage, an allegation of inaccurate reporting may support an inference that reasonable procedures were not followed, thereby permitting discovery.  Id.; see also Haley v. TalentWise, Inc., 9 F. Supp. 3d 1188, 1193 (W.D. Wash. 2014) (stating that plaintiff's allegation of "duplicative, but inconsistent, reporting of the refusal to submit to a breathalyzer charge plausibly suggests [the defendant] did not have reasonable procedures in place to assure the information's accuracy.")

Reasonable procedures are those followed by a reasonably prudent person.  Smith, 711 F. Supp. 2d at 434.  The Court must "weigh the potential harm of inaccuracy against the burden of safeguarding against such inaccuracy."  Id.  Whether reasonable procedures were followed is "normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question."  Shannon v. Equifax Info. Servs., LLC, 764 F. Supp. 2d 714, 723 (E.D. Pa. 2011) (quoting Cortez, 617 F.3d at 709).  As noted, a plaintiff generally can move forward by showing "an inaccuracy in the consumer report and nothing more."  Smith, 711 F. Supp. 2d at 434 (quoting Philbin, 101 F.3d at 965).

In Smith, a case from this District, the plaintiff alleged that the defendant CRA failed to follow reasonable procedures to ensure maximum possible accuracy when it duplicated the plaintiff's criminal history on a criminal background check.  Id. at 430.  On numerous occasions,

the defendant supplied criminal background checks to the plaintiff's potential employers which listed his criminal history multiple times. Id. The Smith court concluded,

> [S]uch allegations satisfy the Twombly/Iqbal standards for pleading a willful violation of § 1681e(b) of the Fair Credit Report Act. The facts alleged in the Complaint clearly allow this Court to infer the plausibility of a claim that Defendant willfully failed to follow reasonable procedures to assure maximum possible accuracy of the information about Plaintiff in the report. While such bare allegations would not necessarily withstand summary judgment scrutiny, the Court remains mindful of the fundamental tenet that a plaintiff, having set forth a legally and factually viable cause of action is entitled to the benefits of discovery before being put to his or her proofs.

Id. at 438.

Here, Plaintiff has alleged an inaccuracy in the report due to duplicative reporting of her criminal history. There is no strict liability for an inaccuracy and the CRA can escape liability by showing that reasonable procedures were followed; however, this "will be a jury question in the overwhelming majority of cases." Philbin, 101 F.3d at 964-65. The inclusion of the same offenses multiple times within a criminal background report is sufficient to warrant discovery on the matter. Plaintiff has met her burden at this stage because she has pled that "report[ing] the same criminal information multiple times on a report, create[s] a report that inaccurately exaggerates the consumer's criminal history." (Doc. No. 13 ¶¶ 1, 48-71.)

### C) Civil Liability for Negligent Noncompliance

Plaintiff has alleged that Defendant negligently violated the FCRA. There are four elements to a negligent noncompliance claim under § 1681e(b):

> "(1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry."

Cortez, 617 F.3d at 708 (quoting Philbin, 101 F.3d at 963). Based on the above analysis, the first two elements are satisfied. Regarding the third and fourth elements, Plaintiff has pled that she

suffered an injury due to the inclusion of inaccurate information in her criminal background report.  Plaintiff pled that Merry Maids denied her a job after Defendant sent her prospective employer an erroneous criminal background report and that, as a result, she suffered wage loss and emotional distress.  (Doc. No. 13 ¶ 76.)  Therefore, Plaintiff has sufficiently pled a negligent noncompliance claim.

> D) **Civil Liability for Willful Noncompliance**

Plaintiff is also pursuing a claim of willful noncompliance, seeking additional damages under § 1681n.  (Doc No. 13 ¶ 1.)  Under the FCRA, willful noncompliance means knowing or reckless noncompliance with the statute.  Safeco, 551 U.S. at 57; see also Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997) (finding that plaintiff must show a reckless, conscious disregard for the rights of others, but need not show malice or evil motive); Smith, 711 F. Supp. 2d at 433 (clarifying that reckless disregard of the FCRA also qualifies as a willful violation within the meaning of section 1681n(a)).  Thus, in order for Defendant to have willfully violated the FCRA, it must have known that it was violating the statute or otherwise acted in an objectively unreasonable way.  Safeco, 551 U.S. at 70.

Plaintiff alleges that Defendant knowingly violated the FCRA.  (Doc. No. 13 ¶ 108.)  She asserts that Defendant knew or should have known that duplicative reporting was a violation of the FCRA.  (Id. ¶ 104).  Plaintiff contends that a Federal Trade Commission case against another CRA for inaccurate duplicative reporting, as well as Defendant's membership with the National Association of Professional Background Screeners, constitute a plausible basis for knowledge.  (Id. ¶¶ 85-86 (citing U.S. v. HireRight Sols., Inc., No. 12-cv-1313, ECF No. 3, Stipulated Final Judgment at 4 (D.D.C. Aug. 29, 2012)).)

In response, Defendant argues that constructive knowledge is not enough to prove willfulness; a plaintiff must show recklessness. In a FCRA case, "[a] defendant's conduct is reckless only if it was 'objectively unreasonable' in light of 'legal rules that were clearly established at the time.'" Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 249 (3rd Cir. 2012) (quoting Safeco, 551 U.S. at 69). Defendant maintains that there is no appellate or agency guidance that would put it on notice that duplicative reporting violated the FCRA. In her Reply, Plaintiff cites a federal district court decision that found duplicative reporting to be an inaccuracy under 1681e(b). (Doc. No. 18 at 9 (citing Smith, 711 F. Supp. 2d at 433)); see also Horsch v. Wells Fargo Home Mortg., 94 F. Supp. 3d 665, 678 (E.D. Pa. 2015) (noting that district court decisions, in addition to appellate court decisions, can put CRAs on notice of reporting standards).

As noted, in a similar case in this district, the court found that "Defendant's decision to include, either intentionally or recklessly, multiple listings for Plaintiff's single criminal offense could, under the statute's plain language, be an objectively unreasonable interpretation." Smith, 711 F. Supp. 2d at 437. Plaintiff avers that Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by reporting the same criminal incident multiple times on a single report. (Doc. No. 13 ¶¶ 107-108.) Given the case law, agency guidance, and statutory text, it is plausible that Defendant willfully violated § 1681e(b). Moreover, Plaintiff need not "prove that Defendant's purported interpretation was objectively unreasonable at the Motion to Dismiss stage." (Doc. No. 18 at 15); Dennis, No. CIV. A. 14-2865, 2014 WL 5325231, at *9 (E.D. Pa. Oct. 20, 2014) (stating, "Plaintiff is not obligated at the Motion to Dismiss phase to prove that Defendant's [alleged FCRA violation] was based on a reading of the FCRA that was either knowingly erroneous or was objectively unreasonable and therefore reckless.") The Court's role

is to determine whether the Amended Complaint sufficiently pled facts that show the plausibility of a willful violation. The Court concludes that, at this stage, the facts as pled could constitute a willful violation.

Based on the foregoing, viewing the facts alleged in the light most favorable to Plaintiff, she has plausibly alleged a violation of § 1681e(b) by pleading a set of facts showing that Defendant did not follow reasonable procedures in order to assure maximum possible accuracy of her report as required by the FCRA.

## V. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Count II of the Amended Complaint will be denied. An appropriate Order follows.